**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RONALD MORRISON,                    *

    Plaintiff,                    *

v.                                  *          Case No.: DLB-21-1987

CITY OF CUMBERLAND, *et al.*,       *

    Defendants.                   *

**MEMORANDUM OPINION**

Ronald Morrison filed suit against the City of Cumberland and the Mayor and City Council of Cumberland (collectively, "defendant"), alleging violations of the Americans with Disabilities Act ("ADA"), Maryland Fair Employment Practices Act ("MFEPA"), Family and Medical Leave Act ("FMLA"), Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, and Maryland common law in connection with his 2020 termination from his employment. ECF 1. Defendant moves to dismiss all but one of the pending counts. ECF 12. The motion is ripe for disposition. ECF 15, 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth in this memorandum opinion, defendant's motion is granted in part and denied in part.

## I.      Background

Ronald Morrison was employed by the Public Works Department for the City of Cumberland from August 15, 2016, until March 31, 2020. ECF 1, ¶¶ 18–19, 87. His work duties involved heavy-duty labor, including "blacktopping, potholing, filling salt barrels, and snow removal." *Id.* ¶¶ 20–21. On May 24, 2019, Morrison was rear-ended while driving a vehicle for work. *Id.* ¶¶ 22–23. He "had an onset of immediate back pain." *Id.* ¶ 6. Initially, he continued to work, though he experienced pain, which increased while he was on the job. *Id.* ¶¶ 24–26. On

June 24, 2019, he consulted a chiropractor. *Id.* ¶ 28. At the appointment, he reported significant pain and was diagnosed with "[o]ther intervertebral disc displacement, lumbar region" and "thoracic region[,] . . . [s]prain of sacroiliac joint," and "[c]ontracture of muscle, multiple sites." ECF 1-6, at 2–4. On June 26, 2019, Morrison reported to Mountain View Primary Care where he was diagnosed with thoracic and lumbar back pain and pain in his left leg. ECF 1, ¶¶ 30–31; ECF 1-7, at 2. Between June 24, 2019, and July 1, 2019, Morrison used his vacation days to get a break from work. ECF 1, ¶ 32. On July 1, 2019, he returned to Mountain View Primary Care and was ordered to take off work from July 1, 2019, until July 10, 2019, though he remained out of work past July 10, 2019, due to persistent back pain. *Id.* ¶¶ 34–35. On July 26, 2019, while he was still out of work, Morrison filed for benefits with Maryland Workers' Compensation Commission. *Id.* ¶ 36. He received workers' compensation benefits from July 1, 2019, until March 22, 2020, during which time he did not work. *Id.* ¶ 37. He continued seeking treatment during that period. *Id.* ¶ 38.

In November 2019, Morrison "was instructed by the [d]efendant that he would be required to take FMLA leave." *Id.* ¶ 122. The representative at human resources gave the FMLA paperwork to Rebecca Morrison, plaintiff's wife, and not plaintiff. *Id.* ¶ 123. The human resources coordinator, Rhonda Devault, "indicated to [p]laintiff via a telephone call that [he] had to sign the FMLA paperwork to keep his job." *Id.* ¶ 124. On November 12, 2019, Morrison submitted his FMLA application to Ms. Devault, and defendant approved it one day later. *Id.* ¶¶ 126, 128. Morrison alleges defendant never notified him that his FMLA leave was approved. *Id.* ¶¶ 129–31, 135. He claims defendant's FMLA approval process was riddled with errors and that "[t]he insufficiency of the FMLA application [process] warrants the conclusion that [he] was never on FMLA." *Id.* ¶¶ 132–54. He acknowledges that twelve weeks from the date his FMLA leave

allegedly began was February 5, 2020, at which time he still had not returned to work, but he asserts he never was notified that his leave had ended. *Id.* ¶¶ 158–60.

On February 3, 2020, Dr. Ronald Cohen conducted an Independent Medical Examination ("IME") "on behalf of the [Workers' Compensation] insurance company." *Id.* ¶ 41. Dr. Cohen concluded Morrison

> is unable to sit for any prolonged period of time. He is currently having radicular pain down the left leg. Therefore, he is temporarily totally disabled. He cannot work at full duty or at a light duty job. This is because he is unable to stand and walk for more than 20–30 minutes at a time and he is unable to sit for more than very brief periods. Therefore, he cannot return for work and is temporarily totally disabled.
>
> Mr. Morrison has not yet attained maximum medical improvement. Because of his non response to treatment thus far, I am not able to determine exactly when he will attain maximum medical improvement.

ECF 1-11, at 8. Dr. Cohen authored two addenda to this opinion. ECF 1, ¶¶ 47, 51. On February 11, 2020, after Dr. Cohen reviewed MRI images of Morrison's lumbar spine, he concluded "there is no explanation for [Morrison's] persistent symptoms." ECF 1-12, at 2. After suggesting a follow-up MRI, Dr. Cohen noted that "[i]f the repeat MRI of the lumbar spine fails to show an anatomic reason for the left leg pain, and if the evaluation of [his] left hip is unremarkable, then he will have attained maximum medical improvement." *Id.* On March 9, 2020, Morrison received a second MRI of his lumbar spine, and Dr. Cohen concluded that he had reached maximum medical improvement and that his "lumbar condition [was] responsible for a [ten percent] permanent partial impairment of the whole person." ECF 1-13, at 2–3; *see* ECF 1, ¶ 50. Morrison alleges these opinions were based on just 15 minutes of in-person evaluation on February 3, 2020. ECF 1, ¶ 56.

On March 26, 2020, Jeff Natale, a nurse practitioner at Mountain View Primary Care, wrote Morrison "may be able to return to work to full duty involving standing, bending, and lifting within reason." ECF 1-16, at 2. Morrison "immediately sent this order to his [u]nion [r]epresentative,

Carroll Braun," who "then forwarded this order to the City of Cumberland Administrator, Jeff Rhodes." ECF 1, ¶¶ 62–64.  Morrison alleges he was "fully prepared to come back to work on April 1, 2020." *Id.* ¶ 65.

On March 31, 2020, however, Braun called him to let him know that he had been terminated and "informed [him] that he was terminated due to the [defendant's] concern that he would reinjure himself and cost the employer more money." *Id.* ¶¶ 66–67.  Defendant issued a termination letter that day. *Id.* ¶ 68.  In it, Rhodes wrote:

> I received and reviewed Dr. Ronald J. Cohen's Independent Medical Evaluation dated February 3, 2020[,] and the addenda thereto dated February 11, 2020[,] and March 16, 2020.  Those reports detail the medical treatment you received for the injuries you sustained from an accident that reportedly occurred on May 24, 2019, the diagnostic testing that was performed as an incident thereto and Dr. Cohen's recommendations and findings regarding the foregoing.  Dr. Cohen is a board-certified neurological surgeon.
>
> In his February 3 report, Dr. Cohen stated: "Mr. Morrison is unable to sit for any prolonged period of time.  He is currently having radicular pain down the left leg.  Therefore, he is temporarily totally disabled.  ***He cannot work at full duty or at light duty.***  This is because he is unable to stand and walk for more than 20-30 minutes at a time and is unable to stand and walk for more than 20-30 minutes at a time and he is unable to sit for more than very brief period.  ***Therefore, he cannot return to work and is temporarily totally disabled.***
>
> The addenda detail Dr. Cohen's findings relative to the imaging for your July 192, [sic] 2019[,] lumbar spine MRI and follow-up MRIs which were performed at his recommendation.  This follow-up did not present any basis for changing the findings made in the IME.  He opined that further conservative treatment will not significantly alter your complaints.  He concluded that you have reached maximum medical improvement.
>
> After reviewing your job description and Dr. Cohen's IME and the addenda thereto, I conclude that you cannot perform your essential duties, with or without reasonable accommodations, and that attempts to do so would expose you to further risk of injury.
>
> Accordingly, I regret to inform you that your employment with the City of Cumberland is terminated effective the close of business today.

ECF 1-17, at 2–3 (emphasis in original).  Morrison alleges this termination letter is internally inconsistent because Dr. Cohen's addenda "provided a change in his findings from the February 3, 2020 IME."  ECF 1, ¶ 75.  He further alleges defendant "handpicked select parts of Dr. Cohen's report to properly fit [its] narrative to terminate" him.  *Id.* ¶ 76.

Morrison immediately filed a grievance through his union and attended a grievance meeting on April 9, 2020.  *Id.* ¶¶ 78–79.  At the meeting, Rhodes allegedly disregarded the Natale letter and suggested that his reason for doing so was that Natale was a nurse practitioner, not a doctor like Dr. Cohen.  *Id.*  ¶¶ 82–85.

The complaint sets out numerous allegations of post-termination interactions between Morrison and employees of the defendant.  Just a few of those allegations are relevant to the pending motion to dismiss.  Morrison alleges "Jeff Rhodes pivoted his argument [about the reason for his termination], and cited [p]laintiff's failure to provide the Family and Medical Leave Act Fitness for Duty Exam [as] the reason for his termination."  *Id.* ¶ 114.  Because he was not provided the FMLA paperwork, Morrison alleges he was not aware the test was necessary and would have taken it had he known of the requirement.  *Id.* ¶¶ 163–65.  He alleges that he attended an arbitration hearing in October 2020, but he does not state the outcome of that hearing.  *Id.* ¶ 176.

On August 6, 2021, Morrison filed a complaint with this Court in which he alleged seven counts: (I) retaliation in violation of the MFEPA, Title VII of the Civil Rights Act, and §§ 501 and 503 of the Rehabilitation Act; (II) disability discrimination in violation of the ADA; (III) failure to accommodate in violation of the MFEPA; (IV) a violation of "Maryland Public Policy" by termination solely for filing a Workers' Compensation claim; (V) a violation of the FMLA under 29 C.F.R. § 825.300(d); (VI) retaliation in violation of the FMLA; and (VII) intentional infliction

of emotional distress.  Defendant has moved to dismiss all counts except Count I.[1]  ECF 12.

Morrison opposed, ECF 15, and defendant replied, ECF 16.  Morrison also submitted, at the

Court's request, additional briefing on issues first raised in defendant's reply.  ECF 19; *see* ECF

18.  For the reasons set forth herein, the motion to dismiss is denied in part and granted in part.

## II.   Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of

a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'"  *In

re Birmingham*, 846 F.3d 88, 92 (4th Cir.), *as amended* (Jan. 20, 2017) (quoting *Walters v.

McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)); *see* Fed. R. Civ. P. 12(b)(6).  To survive a Rule

12(b)(6) motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests.'"  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting

*Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).  Stated differently, the complaint must provide

"a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  When resolving a Rule 12(b)(6) motion to dismiss, the Court accepts the well-

pleaded allegations as true.  *See Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court "does not resolve contests surrounding

facts, the merits of a claim, or the applicability of defenses."  *Ray*, 948 F.3d at 226 (quoting *Tobey*,

706 F.3d at 387).

---

[1] Defendant refers to Count I, a retaliation claim, only to the extent it alleges a violation of the
MFEPA in its argument on whether Morrison was denied a reasonable accommodation under that
statute.  ECF 12, at 9.  However, defendant does not analyze in that section or elsewhere whether
Count I's retaliation claims under the MFEPA, Title VII, and the Rehabilitation Act are sufficiently
pled.  Because the defendant did not challenge the sufficiency of the retaliation claims in Count I,
they remain.

### III.   Discussion

### A.  Disability Discrimination under the ADA and the MFEPA

Morrison alleges that, when he attempted to return to work, defendant regarded him as disabled and discriminated against him on that ground.  ECF 1, ¶ 188.[2]  Title I of the ADA forbids employers from discriminating against employees with disabilities, including employees regarded as disabled, with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112; *Tennessee v. Lane*, 541 U.S. 509, 516 (2004); *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 430 (4th Cir. 2015).  "Following Congress's lead, the Maryland General Assembly enacted laws prohibiting discrimination on the basis of disability." *Adkins v. Peninsula Reg'l Med. Ctr.*, 119 A.3d 146, 156 (Md. Ct. Spec. App. 2015).  The laws were "patterned after federal law . . . and amended . . . to comport with federal law as it was updated."  *Id.*

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that []he has a disability, (2) that []he is a qualified individual for the employment in question, and (3) that [his employer] discharged h[im] (or took other adverse employment action) because of h[is] disability.'"  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)) (internal quotation marks omitted); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 599 (D. Md. 2013) ("to prove a disability discrimination claim under either federal or Maryland law, a plaintiff must

---

[2] Count III of Morrison's complaint is entitled "Disability Discrimination – FEPA Regarded As." ECF 1, ¶¶ 197–200.  In that Count, however, Morrison alleges only that "[d]efendant discriminated against [him] in each and every instance of refusing to accommodate his disability."  *Id.* ¶ 198. The Court nonetheless construes Count III broadly and analyzes whether he has stated an ADA and parallel MFEPA claim for discriminatory termination based on disability.

make the same showing that he is a 'qualified individual with a disability'").  "The ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 236 (4th Cir. 2016) (quoting 42 U.S.C. § 12102(1)).

In 2008, Congress amended the ADA to lessen plaintiffs' burden to show they are disabled under the Act.  As relevant here, the ADA as amended provides that "an individual is regarded as having a disability 'if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'"  *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020) (mem.) (quoting 42 U.S.C. § 12102(3)(A)).

Under the Code of Maryland Regulations, "disability" under the MFEPA includes "being regarded as having a physical . . . impairment . . . that (i) [d]oes not substantially limit major life activities, if the individual is treated by a covered entity as having such a limitation; or (ii) [s]ubstantially limits major life activities as a result of the attitude of the covered entity or of others toward the impairment."  Md. Code Regs. 14.03.02.02 § (B)(6)(d) (2022).  In Maryland, "major life activities" include "working."  *Id.* § (B)(7).

Defendant argues plaintiff has not pled his employer regarded him as disabled.  The Court disagrees.  In his complaint, Morrison details the history of the on-the-job injury he sustained.  He took extensive leave to recover from the injury.  Defendant was aware of the injury because it received Dr. Cohen's consultative medical reports, which described the extent of the injury and its

impact on Morrison's functioning, and defendant knew Morrison was on leave for the injury.  In plaintiff's termination letter, defendant wrote, quoting Dr. Cohen's evaluation,

> Mr. Morrison is unable to sit for any prolonged period of time.  He is currently having radicular pain down the left leg.  Therefore, he is temporarily totally disabled.  He cannot work full duty or light duty.  This is because he is unable to stand and walk for more than 20-30 minute periods and he is unable to sit for more than very brief periods.  Therefore, he cannot return to work and is temporarily totally disabled.

ECF 1, ¶ 69 (emphasis omitted).  The termination letter made specific reference to standing, walking, and sitting—all life activities that, when affected, may suggest disability.  It also refers to his ability to engage in heavy or light work.  Furthermore, it is a clear expression of defendant's beliefs about Morrison's capabilities because one of defendant's employees wrote it on defendant's behalf.  These allegations plausibly allege defendant regarded Morrison as disabled.

Defendant also argues Morrison has not alleged he was a qualified individual under the Act.  The Court agrees that Morrison's allegations that he was qualified for his position are limited.  He makes conclusory allegations that he was qualified to perform his job, which, standing alone, would not suffice.  But he also alleges he was ready and able to return to work on April 1, 2020.  As support for this assertion, he cites a March 26, 2020 letter from Jeff Natale, who wrote Morrison "may be able to return to work to full duty involving standing, bending, and lifting within reason." ECF 1-16, at 2.  Finally, Morrison claims "[d]efendant mistakenly believed" he was disabled, implying that he did not have any disability that disqualified him at the time defendant terminated his employment.  ECF 1, ¶ 3.  Even though Morrison's allegations that he was qualified for his

position are quite limited, the Court finds he has narrowly met the threshold for plausibly alleging this element.[3]

Morrison's ADA claim barely survives a motion to dismiss. The motion to dismiss Count II and Count III, to the extent it asserts a discriminatory termination claim under the MFEPA, is denied.

### B. Failure to Accommodate under the MFEPA

Morrison alleges defendant discriminated against him by failing to accommodate his disability in violation of the MFEPA. The MFEPA "was enacted in 1965 to ensure equal opportunity employment throughout the State." *Chappel v. S. Md. Hosp., Inc.*, 578 A.2d 766, 771 (Md. 1990). Its protections extend to individuals with disabilities, to whom employers must provide reasonable accommodations when necessary. Md. Code Ann., State Gov't § 20-606(a)(4).

> To establish a prima facie case for a failure to accommodate claim, an employee must show: (1) that he or she was an individual with a disability; (2) that the employer had notice of his or her disability; (3) that with reasonable accommodation, he or she could perform the essential functions of the position (in other words, that he or she was a 'qualified individual with a disability'); and (4) that the employer failed to make such accommodations.

---

[3] Defendant argues Morrison is estopped from alleging he was qualified for his position because an arbitrator previously found he was not qualified. ECF 16, at 6–10. Defendant attached an arbitration decision to its reply. The Court cannot consider the arbitration decision on a motion to dismiss because it was not attached to or incorporated into the complaint. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 78 F.3d 597, 606 (4th Cir. 2015) ("Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011))).

Defendant also argues it had legitimate, non-discriminatory reasons for terminating Morrison's employment. While the reasons for his termination may be relevant at summary judgment, they are not relevant to the pending motion to dismiss. *Harrison v. Capital One Servs.*, No. 3:19-cv-854, 2020 WL 1955472, at *2 (E.D. Va. Apr. 23, 2020); *Brown v. Johns Hopkins Hosp.*, No. RDB-13-3258, 2014 WL 3898150, at *7 n.2 (D. Md. Aug. 7, 2014).

*Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 220 (Md. 2016) (internal citation omitted). "A failure to accommodate claim does not, however, require any showing of discriminatory intent." *Id.* (citing *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000)). "To receive an accommodation, an employee must 'communicate[] to his employer his disability and his desire for an accommodation for that disability.'" *Id.* (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013)). "This requirement exists because an employer 'cannot be expected to accommodate disabilities of which it is unaware.'" *Id.* (quoting *Pollard v. Balt. Cnty. Bd. of Educ.*, 65 F. Supp. 3d 449, 456 (D. Md. 2014)). "The burden on an employee to provide notice of a disability is 'not a great one.'" *Id.* at 220–21 (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 473 (D. Md. 2011) (quoting *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 369 n.5 (4th Cir. 2008))). "[A] request for accommodation need not be in writing." *Id.* at 222 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)). The "employee [also] need not submit a formal request for an accommodation, nor must the employee use 'magic phrases'; instead the employee must provide the employer with 'adequate notice' of his disability and need for an accommodation." *Adkins*, 119 A.3d 146, 161 (Md. Ct. Spec. App. 2015).

Morrison fails to state a claim for failure to accommodate because his complaint is devoid of any allegation that he requested an accommodation. He argues his attempt to return to work before his termination amounted to a request for an accommodation. ECF 15-1, at 3 (citing ECF 1, ¶¶ 60–62). A mere request to return to work is not a request for an accommodation. Morrison has not alleged any facts from which the Court could plausibly infer that he provided his employer with adequate notice of a disability and his need for an accommodation.

Morrison also fails to plead that his employer had notice of his disability. His theory appears to be that, when he attempted to return to work, defendant regarded him as disabled but,

in fact, he no longer was disabled.  If he was not disabled, then there could not have been any denial of an accommodation for a disability when he contacted his employer about returning to work.  Without an actual disability, a plaintiff cannot "communicate[] to his employer his disability" and his "desire for an accommodation," both necessary prerequisites to receiving an accommodation.  *See Peninsula Reg'l Med. Ctr.*, 137 A.3d at 220.  To the extent Morrison is alleging his employer regarded him as disabled and failed to accommodate the perceived disability, such a claim is not cognizable under the ADA.  *See* 42 U.S.C. § 12201(h) ("A covered entity under [Title I] . . . need not provide a reasonable modification or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability" solely by being regarded as disabled.).  An employer need not provide a reasonable accommodation to an individual who meets the definition of disability solely by being regarded as disabled.  *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 n.4 (3d Cir. 2013) ("The amendments to the ADA clarified that employers needn't provide reasonable accommodate to a 'regarded as' disabled individual.") Although the MFEPA does not contain a similar provision, the statute comports with the ADA, compelling the same conclusion under the state statute.

Accordingly, Count III, to the extent it alleges a failure to accommodate theory of disability discrimination, is dismissed.

### C. Violation of Maryland Public Policy for Applying for Workers' Compensation Benefits

Morrison alleges defendant violated established public policy when it discharged him solely for filing a Workers' Compensation claim.  "An employer may not discharge a covered employee solely because the covered employee files a claim for compensation under [Maryland's workers' compensation laws]."  Md. Code Ann., Lab. & Empl. § 9-1105.  "To sustain a wrongful discharge action under Maryland's worker's compensation statute, an employee must allege that

he or she was discharged solely and directly because of filing for benefits . . . or that his or her termination violated a recognized rule of law." *Kern v. S. Balt. Gen. Hosp.*, 504 A.2d 1154, 1159 (Md. Ct. Spec. App. 1986).

Morrison's allegations under this Count narrowly evade dismissal. As defendant correctly points out, most of his allegations about whether he was discharged solely because he filed a claim for Workers' Compensation benefits are conclusory. Without more, they would be insufficient to survive a motion to dismiss. But Morrison does provide one additional allegation that pushes his claim over the line to plausibility: he alleges his union representative, Carroll Braun, "informed [him] that he was terminated due to [d]efendant's concern that [he] would reinjure himself and cost the employer more money." ECF 1, ¶ 68. A plausible inference may be drawn from this allegation, when accepted as true, that had Morrison not sought and received benefits, he would not have been terminated. These allegations are sufficient to withstand a motion to dismiss.

The motion to dismiss Count IV is denied.

### D.  FMLA Violation under 29 C.F.R. § 825.300(d)

Morrison alleges defendant violated a regulatory duty by failing to provide him any notice that his leave was designated as FMLA leave or that he was required to provide a Fitness for Duty certificate in order to return to work.

Under the FMLA, eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period" for certain covered life events. 29 U.S.C. § 2612(a)(1). "[A]ny eligible employee who takes leave" pursuant to § 2612 is entitled, "on return from such leave— (A) to be restored by the employer to the position held by the employee when the leaved commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1). The FMLA provides that

"an employer cannot 'interfere with, restrain, or deny the exercise of or the attempt to exercise'"

those rights.  *Fry v. Rand Const. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (quoting *Waag v. Sotera*

*Def. Sols., Inc.*, 857 F.3d 179, 186 (4th Cir. 2017)); 29 U.S.C. § 2615(a)(1).

Under the FMLA's implementing regulations, employees have the right to receive notice

of the approval of an application for FMLA leave and the requirements for reinstatement:

> The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section.  When the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances.
>
> . . .
>
> If the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice.  If the employer will require that the fitness-for-duty certification address the employee's ability to perform the essential functions of the employee's position, the employer must so indicate in the designation notice, and must include a list of the essential functions of the employee's position.  If the employer handbook or other written documents (if any) describing the employer's leave policies clearly provide that the fitness-for-duty certification will be required in specific circumstances (e.g., by stating that fitness-for-duty certification will be required in all cases of back injuries for employees in a certain occupation), the employer is not required to provide written notice of the requirement with the designation notice, but must provide oral notice no later than with the designation notice.
>
> The designation notice must be in writing. . . .

29 C.F.R. § 825.300(d).  "Failure to follow the notice requirements . . . may constitute an

interference with, restraint, or denial of the exercise of an employee's FMLA rights."  *Id.*

§ 825.300(e).  However, "[i]f an employer does not designate leave as required by § 825.300, the

employer may retroactively designate leave as FMLA leave with appropriate notice to the

employee as required by § 825.300 provided that the employer's failure to timely designate leave does not cause harm or injury to the employee." *Id.* § 825.301(d).

To recover for a violation of the notice requirement, a plaintiff must show prejudice. *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016). The Fourth Circuit has held that "[p]rejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently." *Hannah P. v. Coats*, 916 F.3d 327, 346–47 (4th Cir. 2019) (quoting *Vannoy*, 827 F.3d at 302).

Morrison alleges that he suffered prejudice because, if he had received notice, he would have submitted the proper paperwork at the end of March 2020 so that he could have returned to work and not lost his job. This is not cognizable prejudice. A notice violation must interfere with a right protected by the FMLA, and FMLA rights are protected only through the Act's guaranteed twelve-week leave period. In this regard, the Supreme Court's decision in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), is instructive. In *Ragsdale*, the Court held that an employer may not be liable for an FMLA notice violation where the plaintiff, who did not receive notice of approval of her application for FMLA leave, received 30 weeks of leave prior to her termination. 535 U.S. at 85, 96. The Supreme Court emphasized "the FMLA guaranteed [the plaintiff] 12— not 42—weeks of leave." *Id.* at 96. Thus, even if Morrison is correct that, on March 30, 2020, he would have submitted the Fitness for Duty certification defendant required, he would have been too late to exercise his right retain his job. His FMLA leave expired on February 5, 2020. After that, the FMLA no longer protected his right to return to his position. Morrison does not allege he could have returned to work by the end of any twelve-week, FMLA-protected period. He received

all leave guaranteed under the FMLA, and he has failed to allege any prejudice resulting from the alleged FMLA notice violation.

Accordingly, Count V is dismissed.

### E.   Retaliation under the FMLA

Morrison alleges defendant retaliated against him for seeking and taking FMLA leave.  The statute makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA.  29 U.S.C. § 2615(a)(2).  "The FMLA provides proscriptive rights 'that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA.'"  *Vannoy*, 827 F.3d at 304 (quoting *Dotson v. Pfizer, Inc.*, 558 F.3d 384, 294 (4th Cir. 2009)).  Retaliatory intent "can be established by direct evidence of retaliation or through the familiar burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)."  *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).  "To succeed on a claim of retaliation" under the *McDonnell Douglas* burden-shifting framework, "a plaintiff must show 'that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity."  *Id.*  As to causation, "[w]hile evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'"  *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

Morrison has alleged all three elements of an FMLA retaliation claim.  He alleges protected activity—taking FMLA leave—and an adverse action—termination.  *See id.* ("It is undisputed here that [the plaintiff] engaged in a protected activity (taking FMLA leave) and that he

experienced an adverse employment action (termination).").  As to causation, Morrison alleges

that he was "terminated shortly after returning from the alleged FMLA leave."  ECF 1, ¶ 224.

According to the complaint, defendant maintains his FMLA leave began on November 13, 2019,

and ended on February 5, 2020.  Morrison was terminated on March 31, 2020.  A gap of less than

two months between engaging in a protected activity and being terminated is sufficient temporal

proximity to plausibly allege causation at the motion to dismiss stage.  *King v. Rumsfeld*, 328 F.3d

145, 151 & n.5 (4th Cir. 2003).

>    Defendant's motion to dismiss Count VI is denied.

### F.   Intentional Infliction of Emotional Distress

>    Morrison alleges defendant intentionally inflicted emotional distress on him.  The elements

of intentional infliction of emotional distress under Maryland law are [1] the defendant's "conduct

was intentional or reckless; [2] the conduct was extreme and outrageous; [3] a causal connection

between the wrongful conduct and the emotional distress; and [4] the emotional distress was

severe."  *Burgess v. Goldstein*, 997 F.3d 541, 554 n.5 (4th Cir. 2021) (citing *Harris v. Jones*, 380

A.2d 611, 614 (Md. 1977)).  To state a claim, plaintiff must allege the defendant "desire[d] to

inflict severe emotional distress," knew that "such distress [was] certain, or substantially certain,

to result from [its] conduct," or "act[ed] recklessly in deliberate disregard of a high degree of

probability that the emotional distress [would] follow."  *Haines v. Vogel*, 249 A.3d 151, 163 (Md.

Ct. Spec. App. 2021) (quoting *Harris*, 380 A.2d at 614).  Additionally, to be "extreme and

outrageous," the conduct "must be so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*

(quoting *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992), and noting, as of 2021, "[a] claim

for IIED has been sustained in Maryland four times"); *see also id.* at 163–64 (identifying

cognizable IIED claims where "HIV-positive surgeon operated on the appellants without their knowledge of his disease"; "psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple"; "physician with herpes had sex with nurse without informing her that he had the disease and infected her"; and "workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the 'sole purpose' of harassing her and forcing her to drop her claim or commit suicide"). Liability for this tort "should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Haines*, 249 A.3d at 163 (quoting *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991)), *cert. denied*, 257 A.3d 1153 (Md. 2021).

Morrison's conclusory allegations as to intentional infliction of emotional distress cannot withstand a motion to dismiss. As to the first element, intentional conduct, he generally alleges defendant's "conduct intentionally, willfully and maliciously humiliated [him,] an eager and loyal employee with an obvious and apparent disability." ECF 1, ¶ 230. He further alleges defendant, by its "collective actions . . . over the course of Plaintiff's employment[,] acted with the intent to inflict emotional distress . . . or acted recklessly when the [d]efendant was certain or substantially certain emotional distress would result from [its] conduct." ECF 1, ¶ 232. But Morrison alleges no specific facts to support these conclusory allegations. As to the second element, extreme and outrageous conduct, he offers a mere conclusory allegation that the conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," but he does not make clear to which conduct he refers or what about it was so extreme that it plausibly could meet the high bar for intentional infliction of emotional distress. As to the final element, severe emotional distress, he claims he had "feelings he never before felt about his physical disability, feelings of worthlessness at work and at home, feelings of shame and detachment from his wife

and family, and the emotional distress from losing his employment." *Id.* ¶ 233.  These allegations of emotional distress are not sufficiently severe to plausibly allege the final element of an intentional infliction of emotional distress claim.

Morrison's allegations in support of this claim are not much more than mere recitations of the claim's elements.  More is required to survive a motion to dismiss.  *See Krueger v. Angelos*, 26 F.4th 212, 215 n.1 (4th Cir. 2022) (court does "not accept as true unwarranted inferences, unreasonable conclusions or arguments" (quoting *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020))).  Accordingly, Count VII is dismissed.

### G.  Leave to Amend

In the event the Court found he failed to state a claim, Morrison requested leave to amend his complaint.  ECF 15-1, at 21–22.  The Court dismisses only three claims: the failure to accommodate claim (Count III), the FMLA notice claim (Count V), and the intentional infliction of emotional distress claim (Count VII).   Morrison has not identified any unpled allegations that would save these claims, despite being put on notice of their deficiencies.   Because he has not identified any grounds supporting his request for leave to amend, his request is denied.  He may, however, file a substantive motion for leave to amend the claims he failed to plead sufficiently in Counts III, V, and VII, if he has a good faith basis for doing so, by June 8, 2022.

## IV.   Conclusion

For the reasons set forth in this memorandum opinion, Counts V and VII are dismissed, and Count III, to the extent it alleges a failure to accommodate theory of disability discrimination,

is dismissed.  As to the remaining counts, defendant's motion to dismiss is denied.  A separate Order follows.


Date: <u>May 25, 2022</u>                                      _____
                                                                                   Deborah L. Boardman
                                                                                   United States District Judge